Argued 13 November; decided 10 December, 1900.

## STATE *v.* CARLSON.

[ 62 Pac. 1016.]

PROPERTY QUALIFICATION OF GRAND JUROR.

1. Hill's Ann. Laws, § 952, and § 954, as amended by Laws, 1893, p. 84, require the county court at its first term in each year to make a jury list from the last preceding assessment roll. Not less than ten days before a term of the circuit court at which jurors are required to serve, thirty-one persons are to be drawn from the names previously taken from the list deposited in the jury box, and from these seven are to be chosen as grand jurors. *Held*, that a grand juror serving at a term of court commencing January 8, 1900, is eligible, his name appearing on the assessment roll for 1898, since his selection ten days before the term must have occurred in 1899, and his name must have been taken from a list prepared by the county court at its first term in 1899 from the assessment roll of 1898.

GRAND JUROR—"TAXABLE PERSON."

2. Where a person is entered on the assessment roll as the owner of certain realty, and is allowed an exemption to the full amount of the assessed value of the realty, he is still a taxable person within a statute requiring grand jurors to be taxable persons, since the statute of exemption (Hill's Ann. Laws, § 2732, subd. 8) exempts personalty only.

QUALIFICATION OF GRAND JUROR—EFFECT OF SELLING PROPERTY.

3. That the owner of realty entered on the assessment roll may have transferred it to another before being drawn as a grand juror does not disqualify him as such juror, under Hill's Ann. Laws, § 2770, requiring grand jurors to be selected from the taxable persons of the county.

CONSTITUTIONALITY OF LAW FOR SELECTING GRAND JURORS.

4. Since the Constitution of Oregon requires only that grand jurors shall be selected from the most competent of the permanent citizens of the county, Article VII, § 18, it necessarily devolved upon the legislature to prescribe what class of persons shall be considered most competent, and how their competency shall be determined; and its directions on that subject (Section 947, Hill's Ann. Laws,) prescribing the qualifications of grand jurors, and providing (section 1234) that no challenge to the panel or any member thereof shall be allowed except by the court for lack of the required qualification, is constitutional.

CONCLUSIVENESS OF DECISION AS TO QUALIFICATIONS.

5. As no appeal exists by right from the decision of the trial court on the qualifications of a grand juror, and none is conferred by statute, the decision of that court is conclusive and can not be contradicted or reviewed.

GRAND JUROR—TEMPORARY ABSENCE FROM STATE.

6. The fact that a person whose name is on the jury list afterward temporarily leaves the state, without intent to change his habitation, does not disqualify him as a grand juror after his return.

INDICTMENT—ALLEGATION OF VENUE.

7. Under Hill's Ann. Laws, § 1279, subd. 4, making an indictment sufficient if it can be understood therefrom that the crime was committed within the jurisdiction of the court, an indictment averring that the crime was committed in the

county is sufficient, and need not negative the fact that it might have been committed in that part of the county over which the federal courts have exclusive jurisdiction, this being a matter of defense.

INDICTMENT—WAIVER OF OBJECTION OF DUPLICITY.

8. An objection to an indictment on the ground of duplicity must be raised by demurrer, or it will be considered waived: *State* v. *Lee*, 33 Or. 506, cited.

INDICTMENT—ROBBERY WITH DANGEROUS WEAPON.

9. Under a statute such as Section 1741 of Hill's Ann. Laws, punishing any person who, being armed with a dangerous weapon, shall assault another with intent, if resisted, to kill or wound the person assaulted, and shall rob or take from the person assaulted any property, etc., an indictment is sufficient as to the use of the means of assault when it charges that the accused, being armed with a dangerous weapon, to wit, a Winchester rifle, loaded with powder and bullets, did wilfully and feloniously assault persons named by feloniously aiming and pointing said rifle at and towards the bodies of such persons, accused being then and there within shooting distance.

SUFFICIENCY OF ORDER FOR GRAND JURY.

10. Under the act of February 17, 1899 (Laws, 1899, p. 99), authorizing the court to convene a grand jury whenever, in its opinion, it may be advisable, the order to have a jury drawn is an expression of the court's opinion as to a necessity therefor, and it need not make a special finding in respect thereto.

From Multnomah : MELVIN C. GEORGE, Judge.

Andrew Carlson appealed from two convictions of robbery with force. The cases are reported for convenience under one head.          AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Chas. J. Schnabel*.

For the state there was a brief over the names of *D. R. N. Blackburn*, Attorney-General, *Geo. E. Chamberlain*, District Attorney, and *Arthur C. Spencer*, with an oral argument by *Mr. Blackburn*.

MR. JUSTICE MOORE delivered the opinion of the court.

The defendant Andrew Carlson was convicted upon an indictment charging him with the crime of assault and robbery, being armed with a dangerous weapon, alleged to have been committed in Multnomah County, November 4, 1899, by putting C. E. Harding and C. H. Knud-

son in fear, and taking from each a watch and certain
gold, silver, and nickel coins; and, having been sen-
tenced therefor to imprisonment in the penitentiary for
the term of fourteen years, he appeals.

Within the time allowed to plead, he filed an affidavit
to the effect that one William Connor was a member of
the grand jury when the indictment was found; that at
the time he was impaneled as such he was not, and for
a year immediately preceding had not been, an inhabit-
ant or taxpayer of said county, but was and had been a
resident of Spokane, Washington; and thereupon moved
the court to set aside the indictment on the ground that
it was found by a grand jury rendered incompetent by
the impaneling of a disqualified person. He also filed
the supplemental affidavit of one W. D. Freeman, which
shows that on January 31, 1900, he examined the assess-
ment and tax rolls of Multnomah County for the preced-
ing year, and was unable to find any property assessed
to Connor; but that in 1898 William Connor and Hen-
rietta Connor,—the latter presumably his wife,—were
assessed with certain real property in said county valued
at $300, and allowed an exemption in that sum, and that
in 1899 said real property was assessed to one May D.
Engalls. The district attorney filed the counter affidavit
of Connor to the effect that he was, and for twenty years
prior thereto had been, a resident of said county, but in
May, 1899, he went to Spokane to make a visit, with no
intention of changing his residence; that on the twenty-
eighth of that month, being afflicted with appendicitis,
he submitted to a surgical operation, which kept him in
a hospital until August 24, 1899, and as soon as he was
able to travel he left said city, arriving in Multnomah
County on the sixth of the following month. The de-
fendant filed an affidavit in reply to the effect that from
October, 1898, to September, 1899, Connor was identified

with a corporation engaged in constructing irrigating
ditches in the vicinity of Spokane, during which time he
stated to J. Poole, A. Chase, and J. H. Ray, residents
of said city, that he had become a permanent inhabitant
thereof ; that, after he recovered from said operation, he
was advised by his physician that a change of climate
was necessary, whereupon he returned to Multnomah
County ; and that the facts stated in this affidavit could
be substantiated by the depositions of said Poole, Chase,
and Ray. He thereupon moved the court to appoint
some person at Spokane to take the same, and also to
require Connor to appear before a notary public in Mult-
nomah County to give his deposition respecting the mat-
ters set forth in his affidavit. The court, having denied
the latter motion, refused to set aside the indictment,
whereupon the defendant excepted, and his counsel con-
tends that error was committed in these respects.

Where the statute permits a person accused of the
commission of a crime to challenge the panel, it has
been held that, if a grand juror is incompetent, the
defendant is not required to show affirmatively that the
juror participated in the deliberations of the grand jury
when the indictment was found (*State* v. *Smith,* 80 N. C.
410); that a motion made at the proper time to set aside
an indictment on the ground that one of the grand jurors
did not possess the necessary qualifications affords a good
plea in abatement (10 Ency. Pl. & Pr. 355 ; *State* v. *Tilly,*
8 Baxt. 381 ; *People* v. *Wintermute,* 1 Dak. 63, 46 N. W.
694 ; *State* v. *Parks,* 21 La. Ann. 251 ; *Doyle* v. *State,* 17
Ohio, 222 ; *Barney* v. *State,* 12 Smedes & M. 69 ; *State* v.
*Wilcox,* 104 N. C. 847, 10 S. E. 453 ; *State* v. *Jacobs,* 6
Tex. 99 ; *United States* v. *Hammond,* 2 Woods, 197, Fed.
Cas. No. 15294); that the proper time to interpose such
motion is after arraignment, and before a demurrer, has
been filed, or a plea entered (*State* v. *Pool,* 20 Or. 150, 25

Pac. 375; *State* v. *Witt*, 33 Or. 594, 55 Pac. 1053); and, it being insisted that the defendant's motion presented this question to the attention of the trial court, we will examine the alleged error of which he complains.

1.  The first question to be considered is whether Connor possessed the necessary property qualification to render him a competent grand juror. The county assessor each year is required to set down in the assessment roll the names of all the taxable persons in his county: Hill's Ann. Laws, § 2770. It is made the duty of the county court of each county, at its first term in each year, to make from the last preceding assessment roll of the county a jury list containing the names of not less than two hundred nor more than six hundred persons: Hill's Ann. Laws, § 952, and section 954, as amended February 21, 1893 (Laws, 1893, p. 84). The county clerk is required to keep a jury box, and on receiving the jury list he must destroy all ballots remaining in the box, and prepare and deposit therein separate ballots containing the name of each person embraced in said list: Hill's Ann. Laws, § 956. Not less than ten nor more than twenty days before holding a term of the circuit court at which the jurors are required to serve, thirty-one persons shall be drawn at the office of the county clerk from the names deposited in the jury box, and from the number so selected who are in attendance upon the court seven are drawn by lot as grand jurors: Hill's Ann. Laws, §§ 957–959, 1230. It is admitted that Connor's name was entered on the assessment roll of Multnomah County for 1898 by the assessor as a taxable person of said county.

2.  Freeman's affidavit shows that the real property assessed to him and his wife was valued at $300, and

they were allowed an exemption from taxation of that sum. The statute exempts from taxation personal property of every householder to the amount of $300 : Hill's Ann. Laws, § 2732, subd. 8. If the liability to pay a tax were a prerequisite to qualify a person for the performance of jury duty, the exemption noted is not applicable to an assessment of real property, and Connor's name was, therefore, properly entered on the assessment roll of 1898 as a taxable person of said county. It does not appear when he was drawn as one of the panel of jurors, but, as the term of court at which the indictment was found was appointed by law, and convened Monday, January 8, 1900, his selection must have occurred not less than ten days prior thereto, or not later than December 29, 1899, thus conclusively showing that his name was deposited in the jury box as taken from the list made by the county court at its first term in 1899 from the last preceding assessment roll of the county.

3. It also appears from Freeman's affidavit that the land so assessed to Connor and his wife in 1898 was assessed the next year to another person. If it be assumed that an assessment of such property to any person affords evidence of his ownership thereof, the transfer of the title by Connor and wife after his name was entered in the assessment roll of Multnomah County as the owner thereof would not disqualify him as a juror : *State* v. *Middleton*, 5 Port. (Ala.) 484.

4. The next inquiry is whether, after a grand juror has been drawn and impaneled in pursuance of a constitutional statute, evidence is admissible to show that he does not possess the qualifications prescribed by law. Before accepting a person drawn as a grand juror, the court must be satisfied that such person is duly qualified to act

as such juror; but, when drawn and found qualified, he must be accepted, unless the court, on the application of the juror, and before he is sworn, shall excuse him from such service for any of the reasons prescribed by Chapter XII of the Code of Civil Procedure : Hill's Ann. Laws, § 1233. No challenge shall be made or allowed to the panel from which the grand jury is drawn, nor to an individual grand juror, unless when made by the court for want of qualification as prescribed : Hill's Ann. Laws, § 1234. The statute having thus imposed upon the court the duty of ascertaining the qualifications of grand jurors before accepting them, and prohibited all persons from challenging the panel or any individual grand juror, it remains to be seen whether the statute, in these respects, is violative of any constitutional provision. The terrors of the Inquisition, and the arrest and imprisonment of persons from private malice or for entertaining different opinions from the ruling power respecting political and religious matters, induced the adoption of the Fifth Amendment to the Constitution of the United States, which contains the following declaration : "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury," etc. But this clause relates only to federal procedure, and hence does not apply to criminal actions in which the state courts have exclusive jurisdiction. The organic law of this state requires the legislative assembly so to provide that, when grand jurors are drawn, they shall be selected from the most competent of the permanent citizens of the county : Const. Or. Art. VII, § 18. But it did not prescribe the method of determining who are the most competent of the permanent citizens of a county from whom the jurors are to be chosen, nor grant to any person the right to challenge the array, or to object to an individual grand juror when drawn. The

state constitution being a limitation, and not a grant, of power, the legislative assembly possesses the requisite authority to prescribe the class of citizens who shall be eligible as jurors, and to provide the exclusive method of determining their qualifications when drawn as grand jurors. It has, in the exercise of this power, imposed upon the court the duty of ascertaining whether a person drawn as a grand juror is a citizen of the United States, a male inhabitant of the county in which he was returned, and has been an inhabitant thereof for the year immediately preceding; that he is over twenty-one years of age, of sound mind, and in the possession of his natural faculties: Hill's Ann. Laws, § 947.

5. The statute, in effect, interposes a challenge to each grand juror drawn, thereby making his qualifications an issue of fact which the court must determine; and as an appeal from the decision rendered thereon does not exist of right (2 Ency. Pl. & Pr. 19), and is not conferred by statute, it is necessarily conclusive upon the question involved.

6. It must be presumed that the court, in impaneling the grand jury, discharged the duty imposed upon it, and ascertained the qualification of each person drawn before accepting him; and, notwithstanding it may have appeared that Connor was absent from the state on temporary business, without intent to change his habitation, such absence did not disqualify him as a grand juror: State v. Alexander, 35 La. Ann. 1100. Connor having been selected as a qualified juror, and placed on the regular jury list, and thereafter accepted by the court as a grand juror, no error was committed in refusing to set aside the indictment for any disqualification on his part.

7.  The court having overruled defendant's demurrer
to the indictment on the ground that it does not allege
that the crime was committed within the jurisdiction of
the¯trial court, it is contended that an error was com-
mitted thereby.   It is argued that, notwithstanding it is
alleged in the indictment that the crime was committed
in Multnomah County, such averment does not negative
the fact that the alleged crime might have been com-
mitted in that part of said county over which the courts
of the United States have exclusive jurisdiction.   The
jurisdiction of the state over persons within its borders
being general, and that of the United States exceptional
over places purchased for specific uses of the general gov-
ernment, it is not necessary, in an indictment in the state
courts, to negative the jurisdiction of the federal courts ;
but, if the latter have exclusive jurisdiction over the
offense, it is a matter of defense simply :  *People* v. *Collins*,
105 Cal. 504 (39 Pac. 16).   The statute provides that an
indictment is sufficient if it can be understood therefrom
"that the crime was committed within the jurisdiction of
the court": Hill's Ann. Laws, § 1279, subd. 4.   If the
indictment had stated that the crime was committed
within the jurisdiction of the court, without alleging
that it had been committed within a particular county
of the state, it would not have been an averment of a
fact, but the mere statement of a conclusion of law,
which would have rendered the indictment vulnerable to
a demurrer interposed on that ground :  *Early* v. *Com-
monwealth*, 93 Va. 765 (24 S. E. 936) .   The jurisdiction
of the circuit court for Multnomah County being general,
the averment in the indictment that the offense was com-
mitted in that county is a sufficient allegation that it was
committed within the jurisdiction of the court :  *Drum-
mond* v. *Republic of Texas*, 2 Tex. 156.

8. It is contended that the indictment charges more than one crime, to wit, assault and robbery ; but, as no demurrer was interposed on account of the alleged duplicity, if any existed, it was thereby waived : Hill's Ann. Laws, § 1322 ; *State* v. *Bruce*, 5 Or. 68 (20 Am. Rep. 734) ; *State* v. *Doty*, 5 Or. 491 ; *State* v. *Jarvis*, 18 Or. 360 (23 Pac. 251) ; *State* v. *Horne*, 20 Or. 485 (26 Pac. 665) ; *State* v. *Lee*, 33 Or. 506 (56 Pac. 415).

9. It is also contended that the indictment does not state facts sufficient to constitute a crime, in failing to aver that the alleged dangerous weapon was aimed or pointed at the persons claimed to have been assaulted and robbed, and hence the court erred in overruling a demurrer interposed on that ground. The statute provides that if any person, being armed with a dangerous weapon, shall assault another with intent, if resisted, to kill or wound the person assaulted, and shall rob, steal, or take from the person assaulted any money or other property which may be the subject of larceny, such person, upon conviction thereof, shall be punished, etc. : Hill's Ann. Laws, § 1741. The indictment, so far as it relates to the use of a dangerous weapon, charges the commission of the offense as follows : "The said Andrew Carlson, on the fourth day of November, A. D. 1899, in the County of Multnomah, and State of Oregon, being then and there armed with a dangerous weapon, to wit, a Winchester rifle, loaded with powder and leaden bullets, did wilfully and feloniously assault C. E. Harding and C. H. Knudson by then and there feloniously aiming and pointing said Winchester rifle at and towards the bodies of the said C. E. Harding and C. H. Knudson ; he, the said Andrew Carlson, being then and there within shooting distance of the said C. E. Harding and C. H. Knudson," etc. In *Commonwealth* v. *Martin*, 17 Mass. 359, under a

statute of Massachusetts similar to ours, the defendant was indicted for robbery, the charging part in relation to the dangerous weapon being as follows: "He, the said Michael Martin, being then and there, at the time of committing the assault aforesaid, in manner and form aforesaid, armed with a dangerous weapon called a pistol, with intent him the said John Bray, then and there feloniously to kill and maim," etc.; and it was held that it was sufficient that the party accused of the commission of the crime be armed with a dangerous weapon with intent to kill and maim the party assaulted by him in case such killing or maiming be necessary to the purpose of robbery, and that he have the power of executing such intent. We think the indictment sufficiently charges the commission of the offense by the use of the alleged means, and that no error was committed in overruling the demurrer.

10. The organic law of the state having authorized the legislative assembly to modify or abolish grand juries (Const. Or. Art. VII, § 18), an act was approved February 17, 1899 (Laws, 1899, p. 99), providing for criminal prosecutions by information, but authorizing the court to convene a grand jury whenever, in its opinion, it was advisable. The court having made no finding in respect to the necessity for calling a grand jury, it is insisted that the grand jury impaneled had no authority to act, and hence the court erred in not setting aside the indictment. It does not conclusively appear that this question was presented to the trial court for its consideration, but, assuming it to have been, the point contended for is without merit, for the court, having ordered a grand jury to be drawn, thereby expressed its opinion that a necessity therefor existed. ·No prejudicial error appearing in the record, it follows that the judgment is affirmed.

AFFIRMED.

SECOND CASE.

MR. JUSTICE MOORE delivered the opinion of the court.

The defendant A. Carlson was indicted for and convicted of the crime of assault and robbery, being armed with a dangerous weapon, alleged to have been committed in Multnomah County, Oregon, September 12, 1899, by putting Mrs. C. T. Dickinson in fear, and taking from her a gold watch and a gold chain, and certain gold and silver coins of the United States, and, having been sentenced to imprisonment in the penitentiary for the term of fourteen years, he appeals, assigning the same errors as are alleged in the case of *State* v. *Carlson* for the robbery of Harding and Knudson.   Having in that case considered and passed upon the questions presented adversely to the defendant's contention, it follows that the judgment is affirmed.          AFFIRMED.